Case number 20-6027, Perlie Gambrel v. Knox County KY et al. Oral argument is not to exceed 15 minutes per side. Ms. Lovie for the appellant. Thank you. May it please the court, I'm Deborah Lovie on behalf of Perlie Sue Gambrel, Gambrel the plaintiff who represents the estate of Jesse Mills. This is not a summary judgment case. It doesn't matter if the defendants or even if this court finds the officer's version of the facts more compelling. The fact that there are differing versions both supported by ample evidence means that there are issues for the jury to decide. And if there's a dispute effect for any stage of the encounter regarding whether the officer's use of force or the degree and manner of force that they used was constitutionally excessive, then summary judgment was improper and plaintiff is entitled to a trial. This would seem to be the kind, I'm looking at that thing when I talk to you. This would seem to be the kind of case that we ought to analyze in segments under 1983. Would you agree with that? Yeah, have you, are you familiar with that kind of analysis in these cases? I'm not sure whether you mean segments temporally as the district did. Yes, I mean typically in excessive force cases, we'll sort of break it into segments. Yes, and I would agree. Several claims that constitutional rights were violated at a particular point in time. Or at particular points in time. Yeah, correct. And I'm prepared to discuss the evidence for each of the three times. Very good. I agree there's, okay, three. Yeah, there's sort of three or four depending on how you. Yeah, sure. But before you, I would like to just delve into that one overriding issue, which is that the district court's decision chose not to credit Ricky Hobbs's deposition testimony at all. And if Hobbs can be credited, there's no question that this isn't a summary judgment case. Because what Hobbs describes in his deposition is a brutal one-sided beating and a completely unprovoked shooting. Yeah, but if we start at stage one, that's before the beating. And I don't know that it's, so stage one, I know there's a dispute of fact about how they, this man who seems, who his in-laws suggest was on drugs, was kind of acting very strangely, kidnapped his child. He's walking in the middle of the night down a street where a road, a car could come by any time and run over the child. It seems to me, if I'm an officer, my thinking is I have to separate the man from the child pretty quickly. Even if you accept Hobbs's view that they didn't use, I think there's a dispute of fact about whether he was initially tasered versus whether he was initially hit. It doesn't strike me, especially if we think of it in terms of qualified immunity, as unreasonable to think that they would hit him in order to separate him from the child. And a jury might agree with you. There's a dispute of fact on whether or not he was on drugs or whether this was mental illness. There's a dispute of fact. But what the plaintiff does have is that the situation was peaceful. It had been quiet. The child was not crying. Yeah, but he's been, he's committed a crime. Yes, he's committed a crime. Committed a kidnapping. He's walking down a street. It's dark. I would think there is some amount of urgency to separate him from the child. I mean, cars can come by pretty fast on rural roads. And there were, there's testimony that there were lights sort of sequestering him. But there's also Craig Miller's testimony, which, you know, you are perfectly entitled to that opinion. And a jury might agree with you. But the jury might also credit... Well, where's, qualified immunity is a question of law. You have to, you have to point to a case with, at least under the Supreme Court precedent, with analogous facts to suggest that this use of force was excessive. Can you think of any case that has found a violation with any type of facts like the facts? I'm only talking about stage one still, but only like a facts of an officer recognizing that there's a call for a kidnapping and a man walking down the street at night. There isn't one that's specifically on point to that. But what you do have are cases like King, where you have a person who's known to be dangerous to the officers, where there's a threat. And in King, there was even a weapon. And where the, this court is very clear that what happens before the police's violence is a question of fact. And that that's something that the jury should get to decide. And in this case, you have, in addition to Hobbs's testimony, you have James Helton's testimony, the grandfather's, that says that they just walked up and they whacked him on the head. And so coupled with the expert's testimony, a jury could certainly find that that was not appropriate. A jury might agree with you, but it's- Qualified immunity is not for the jury. Qualified immunity is a question of law. And we ask, is there a controlling precedent that suggests what the officer did was a violation of clearly established law? But for the, I'm sorry, I didn't mean to interrupt you. For the qualified immunity piece though, when the question is whether or not the actions were warranted by the situation, that's a jury question under the case law. But I hear what you're saying. But the case law has to make really clear, this is your toughest segment. This is my toughest segment. And in the interest of time, I guess, I hear what you're saying. I would love to- Probably want to go ahead. I mean, I don't want to, I don't want to go. But I would love to move on to- Judge Murphy shouldn't ask any more questions about this, because he certainly can't. But let's, let's- If I may, I'd like to move on to the beating that ensues. As soon as the baby is now taken, the baby is safe, or the child is safe, she's with her grandfather, a beating ensues. And according to the testimony, including testimony from Asher's, it's a very violent encounter. Asher's immediately tases Mills. And while Mills is on the ground, the officers pummel him with their knees, their tasers, their boots, their fists, their batons, their flashlights. And Asher's testimony itself supports this. He talks about tasing immediately, and about Mr. Mills' face-diving when that happens. And then the baby is safe. And then he testifies about, from there, using his taser more times than he could count in the drive stun mode. Using it three times in the prongs mode. Using his baton, his flashlight, his knee kicks to the face. He goes on and on about this. And the only dispute, the only question is whether or not Mills was fighting back. And that is a dispute of fact. Again, you have Hobbs' testimony- What do you make of, so there's the Scott v. Harris exception. Yes. Blatantly contradicted by the record there. It was videotaped. But Hobbs, Hobbs' testimony does seem to be all over the place. I think he essentially testified under oath that he lied to an officer. Do you think that, is there any case at all to suggest that this blatantly contradicted by the record could actually extend to witness testimony, not just video evidence? Absolutely. This is a far cry from Scott v. Harris. And I would urge the court to consider two cases in this regard. The first is Webb v. United States. In Webb, there was a confidential informant who gave five different statements to the FBI. Gave testimony in a criminal trial. And then would have upcoming testimony if this case were allowed to go forward. The district court granted summary judgment. Refused to credit any of them saying he's blatantly, you know, this is a criminal. He's a snitch. And he has all these contradictory testimonies. And this court disagreed. This court held that it is for the jury to determine whether Bray was telling the truth in the first five interviews with the federal investigators. Lucas's criminal trial or neither. Those are very clear disputes of fact that are for the jury to decide. In addition, this court also, there was, I'm blanking on the name of the case here, the Cobley, I believe it is, case where it involved an audio tape. And in that case, there was an audio tape that disputed what the witness said. The witness says, I shouted at the police. And then there's an audio tape where you can't hear it. And this court again held, no, you have to allow the witness to testify. And the jury could decide that there are reasons why it didn't come up in that situation. I'm sorry, it's Coble, not Cobley. And this court held that, you know, even though the tape disputed what his testimony was, a reasonable jury could believe Coble's version of the events. And so there's no reason why a reasonable jury couldn't credit Hobbs in this case. In particular, Hobbs is corroborated by the medical testimony, which shows that Mills was on, that this was a one-sided event. Mills was beaten to a pulp, that his blood was the blood that everybody saw in the officers. The officers looked like they were on the receiving end merely because they were covered in blood, but it was all Mills. So you have that testimony corroborating it. You have testimony from Helton corroborating it about how Mr. Mills never said anything threatening, never acted provocative at the beginning. You have testimony from Daniel Smith corroborating Hobbs' testimony. Daniel Smith is the one who said we were able to, Mills was unconscious or semi-conscious, and we were able to just walk right up to him and talk to him. So at that stage, I would argue again, there's very clearly a dispute of fact. You know, for the third segment when Mills, the officer Ashburn, if I remember his name right, or Ashhurst, he shoots Mills twice. Hobbs at that point, I don't know how much Hobbs does for you there. I mean, I think Hobbs agrees that Mills is within six or seven feet of the officer. Is that fair? Yes, I think. And then the officer has been told, I think, by the father or the father-in-law that Mills had a knife. And so if he's within six to seven feet and he has a knife and he's proceeding, notwithstanding the officer's obviously telling him to stop, I mean, is there a case that makes clear the officer cannot use deadly force at that point? The cases make clear that that's a jury question, that the jury gets to decide that. And qualified immunity, King denied qualified immunity when it was a gun, not a knife. But whether or not this court specifically held that there was a factual dispute about whether or not the officer should feel threatened about whether or not he was pointing the gun. Everyone agreed he had a gun, whether he was pointing it at the officers. And so the court held that that was a jury question. I had a case with a guy with a machete who was advancing on the officer. I forget the name, but I think we granted qualified immunity there. Well, in Sova and Stoddard, both of those cases involved knives. I think one of them had a butcher's knife. Is it undisputed at this stage of the case on the factual question about whether the officer thought he had a knife, thought Mills had a knife? There's no evidence that the officers thought that they had a knife. What the officers were told, the evidence... I find that very significant because if the officers thought he had a knife, I think this is a very different case. There was no evidence. What the officers were told, the only thing the officers knew going in, was that this was the noncustodial father who did not have custody, who had taken his child, that he was walking on the yellow line with relatives, and then several updates about whereabouts, and in each of those being nonviolent. There is no testimony, no evidence that the officers were told that this person had a knife. We have the evidence of what was broadcast to them. There is ample evidence through which we could prove that there was no knife and nothing that was told to these officers that they had a knife. If counsel or Judge Keflage believes there was a knife, that again would be very highly disputed. Am I misremembering the record when I'm thinking that Helton told the doctors that there was... I'm sorry. It's been a long couple of days. Told the officers that there was a knife. I believe you're misremembering the record. Okay. That's quite possible. All right. Well, that's what we're here for. Thank you. You'll have your rebuttal time. Mr. Williams. My name is Jason Williams. I'm here on behalf of the defendants, Knox County, Deputy Ashurst and Constable Bolton. I think, if I can move this chair back just a second, I think it's very important for the court to take a very hard look at the deposition of Mr. Hobbs because in the arguments that have come this far and through Judge Weir's opinion, it's very clear that in rendering his decision in this case, he relied upon not the earlier statement given to the state sworn testimony. And there are a number of things from that testimony that are very important in reviewing the facts of this case and why there is no reasonable... Well, if you look at it, why am I wrong in thinking... I read his deposition. Why am I wrong in thinking the genuine issue of material fact has to be over at stage two? We've put this in sequence. At stage two, when he's on the ground, Hobbs suggests that Mr. Mills was not fighting back and that it was essentially a brutal beating. Do I have to accept that as a fact question at this stage because of Hobbs' testimony? Well, here's what Judge Weir stated in his opinion about that, and he actually looked at the deposition testimony. And he says that Hobbs' suggestion that he as an unrestrained bystander could have easily handcuffed Mills does not reasonably support the inference that Ashurst and Bolton brutalized a peaceful and compliant kidnapper. He actually goes on to say that in his deposition, Hobbs appears to have contradicted himself on this point. But, you know, Judge Weir is not the person to determine the contradictions or the inconsistencies. The jury is. I mean, that's not the judicial role, the proper judicial role. It doesn't matter if he had a good reason for disregarding the Hobbs' deposition. If it's there, it's a part of the record. And if it creates a factual dispute, it's for the jury to decide. Well, and that's my point completely, Your Honor. The Hobbs' deposition is actually detrimental to the Plaintiff's version. How is that true, sir? I mean, when Hobbs, if I can, if I'm accurately paraphrasing, I mean, he says he's getting, Mills is getting a terrible beating while he's basically not resisting on the ground. That segment. And, Your Honor, I think it requires, again, I think a close review of Mr. Hobbs' testimony, especially his cross-examination. But he does say that, right? What I said. He does, Your Honor. But he also. But are you talking about the legs thing? He would hold the legs? Well, there are a number of things I'd like to point out to the Court if I could. I mean, if he says it, I'm struggling to see how there isn't a fact issue. If he says something inconsistent with that, that's impeachment evidence. And you can, you know, cross him on that. If I may. But it doesn't, I mean, it doesn't matter how skillful the cross-examination was. If the direct is there, I mean, it's evidence in the record and can create a fact dispute. Your Honor, there are a number of things that Hobbs said in their deposition, in his deposition, that are contradictory to earlier testimony he gave. He contradicts himself. And I think that makes, it's part of the whole equation of why a reasonable jury couldn't credit him as a witness. Didn't he, didn't he, there was some early encounter with police which he, you know, an interview perhaps fairly soon after all this happened. And I think some of his later testimony or statements do contradict that. But he offered an explanation for that, didn't he? He did, Your Honor. And I don't want to confuse those two things. Because Judge Weir, in his opinion, didn't utilize or rely upon those earlier statements. Everything I'm about to tell you is from Mr. Hobbs' discovery deposition filed in the record. For example, he said that in his testimony on page 83, that the deceased had been on meth for two or three days. That when the cops showed up, that Mills showed him his arms, flexing his fist, a clenched fist. He testified on pages 84 and 85 that when they arrived, he and the grandfather of the children, the custodial parent of these children, that he wouldn't cooperate with me or James or them. So he's saying the entire time that he wouldn't cooperate. And on pages 85 through 86, he kind of goes into a long discussion of what happened during the time that he was on the scene. And I think it's important. I asked him, when you see somebody holding up their arm like that with a clenched fist, is that a sign to you that the person was going to cooperate? He testified, I guess not. He was out of his head. He wouldn't cooperate with me or James, his kid. He wouldn't cooperate with them. They was trying to make him lay down on the ground on his belly and put his hands behind his back and him out of his mind. Like I told that officer, the very minute they got through beating on him, I said, I will hold his legs and you handcuff him. He said, no, you get back here. You get back from me. So this is in his discovery deposition. He gives a very detailed version of what actually happened when he was at the scene. So, I mean, you know, and even in that passage, he says they gave him a beating and all I'm hearing is he kind of put a fist up or something. I mean, that doesn't warrant getting sort of beat to a pulp, I would think. Well, the idea, Your Honor, that he's resisting the entire time, wouldn't listen to their commands, wouldn't listen to their commands earlier. It seems like a lot of though embellishment and extrapolation. Maybe it's true, but a jury would not need to conclude all those things from Hobbs' testimony. Well, Your Honor, if you look at the totality of all the information that's in the record, I think that's what, Judge, we're relying on. That's what juries do. What do you do with the physical evidence that the only blood on any of the individuals was Mills' blood? That suggests to me at least some corroboration of the notion that he wasn't really hitting the officers if the officers were uninjured and the officers had Mills' blood all over them. I mean, that is, the officers tell a story and they may be credible given all the other witnesses, but we have to credit Hobbs' testimony. And that does seem to be one corroborating fact of physical evidence. So, Your Honor, I addressed that some in my briefing below, but there are cases that state that if no reasonable jury could conclude that the defendants were deliberately indifferent to serious medical needs, there's a well-known exception to the holding that judges must let a jury make credibility determinations. But that was my point. The physical evidence is corroboration of, so we don't even have to necessarily rely on Hobbs' testimony alone because there's some physical evidence corroborating the notion that Mr. Mills was just getting beaten up and the officers weren't injured. I think it would require speculation in this case on this evidence as to that point. There is testimony that both of the officers complained of some injury afterwards, a sore knee and that type of thing. But to my knowledge, there is no requirement that an officer be injured in a greater way than the person who they were in a... No, I agree. And I would not suggest the physical evidence alone would be enough to withstand summary judgment if we didn't have live testimony saying that I saw this and Mr. Mills wasn't fighting back. My only point was it's not necessarily the case that Mr. Mills' testimony is contradicted by the record because there's other record evidence that could support it. I think it's also very important for the court to consider here. Again, you have Mr. Hobbs' own testimony stating that at the end and just before the shots were fired, he completely corroborates the testimony of the officers and other eyewitnesses that Mr. Mills sprung to his feet and began reaching for or began reaching or going towards... Well, as I understand, I thought he said that the officers took a break and Daniel Smith came and talked to him for a bit and said, you better start cooperating or they're going to shoot you. And then according to Hobbs, the officers started kicking him so much that they were the ones who were actually trying to get him up rather than trying to handcuff him. Again, Your Honor, I think it's very critical that Mr. Hobbs' deposition be reviewed very carefully and especially on this point because Judge Hobbs' testimony is that they're kicking him to try to get him up, but he's testified at the same time that they were telling him to get down on his belly so that they can handcuff him. And Judge Weir does a good job of making the point that why would you tell somebody to... Why would you kick somebody to get up if at the same time you're trying to get them to lay on their belly so that you can handcuff them? It sure sounds like cross-examination to me, not something that, you know, courts decide. Well, Your Honor, I think they're... I mean, it's all just cross. It's all impeachment, you know? It's the type of case, Your Honor, perhaps a rare type of case, but is supported by the case law where somebody is so incredible as a witness that a reasonable jury couldn't rely upon them. I mean, but this isn't like totally incredible. I mean, these are modest inconsistencies. Well, Your Honor, think about it again in the whole picture. Now, this is a case in which Mr. Hobbs, on the night of the incident... We know. And he gave a pretty good reason, all things considered, you know? The cop, or the officer, sorry, only wanted to hear one thing, according to Hobbs. And if Hobbs is telling the truth there, I mean, you know, that could be... That's not totally incredible. But it goes into the... Again, it's one of those things with the record in front of you and having that available, I would ask the court to review that entire record, the recording and all, the three different versions that Mr. Hobbs has given. And not only has he given three different versions, his deposition, his original statement, and the statement that he gave to plaintiff's lawyer before he gave his sworn testimony, but his own discovery deposition is inconsistent with that. And I would ask yourselves that question. Could a reasonable juror credit a witness where he's actually contradicting himself? Do you have any case law for the proposition that we can find a witness so inherently incredible that we can just disregard that witness and say that the other witnesses are true for purposes of summary judgment, that their testimony is true? Your Honor, I cited the court in my brief below to Scott versus Harris. That's pretty different, right? I mean, that's a video. It was characterizations of what a video showed. And the defendant in that case was saying, as Justice Scalia said, that it sounded like he was driving to take his driver's test. But when you watch the video, that was that driver's test. Running red lights, driving past cars. So you credit the video over conclusions about I was driving safe. I don't know that that can be transplanted to non-video evidence of just credibility disputes among witnesses who watched an event. Well, Your Honor, I think it's especially important to keep in mind that this is a witness contradicting himself. It's true. But you know, juries decide whether the person is credible or not in light of those contradictions. That's what juries do. Not always. I mean, it's not always sort of a binary. This witness is credible or not credible. It might be. I believe this part. I think he's not telling the truth here. But these contradictions really don't put a stake through the part that could make the second segment potentially, you know, an issue of fact. I think it's important. And I understand what the court is saying on that point and appreciate it. What I think is in the summary judgment context, though, where we are made these decisions and you have to decide whether or not this case should survive summary judgment, is that this is a person who has testified and his so complain of survived summary judgment when their witness testifies against them. And so not unfavorable when he says they're beating him to a pulp and he wasn't resisting all that being said, though, Your Honor, I think the qualified immunity in this case is is a sound decision and that it should be the basis alone for summary judgment. Thank you. Thank you. Just a few points, if I may. The first is that Hobbs obviously can be credited. There's no authority. This is not a Scott versus Harris sort of situation. This falls squarely within Webb and within Dobson. And this court's consistent admonition that witnesses can tell different versions of things and it is up for the jury to make the decision about whom they should credit. Hobbs had no reason to lie. He gave credible reasons for his discrepancies and his testimony needs to be credited. And with that, I understand that there is a qualified immunity concern with regards to the very first portion of it. But the case law is very specific and on point with regards to stages two and three. And the testimony that we've provided, the evidence we provided, provide very clear disputes of fact with regard to stages two and three. What's the three? Just again, the three is the shooting. It's oh, I know. But what's you know, what's you have Hobbs who evidence that gets you to a trial there? I'm sorry. You have Hobbs who testifies that they just shot him, that it was unprovoked. There's that quote that's in the brief about him just sort of just I don't know why they would even do that to him. They could have helped him at any point. Instead, they kick him, they bring him to his feet, and then they shoot him. You also have Daniel Smith. Ginsburg. Yes, the dispute about whether he was advancing or how close he was to the officer who shot him. Hobbs. And that's a dispute. Ginsburg. Isn't that right? Hobbs. There is a dispute about that. And you have the medical examiner testimony about no, and Dr. Arden's testimony about no soot and no stippling. And a jury will have to decide how far they were. You have Dr. Arden's testimony that Asher's description doesn't mesh with the bullet trajectory. And you know, Asher's describing what happened is a jury could infer is false based on the bullet trajectory. Hobbs. That's only the second bullet. Isn't that right? Ginsburg. That is the second bullet. You're correct. But a jury can use this evidence to decide, was he advancing? How close was he? And again, King, Sova, and Stoddard are the three cases to look at that make it very clear that this is an issue for a jury as to whether or not they felt threatened and that there is no qualified immunity for Can we switch briefly to Monell? Because I want to give you a chance to respond to some concerns I have with government liability or municipal liability. So the way your facts present this case, it suggests that these officers were essentially rogue officers who just beat this Mr. Mills up gratuitously. And it's not clear to me that additional training, they needed. So they needed training to like the amount, no matter how much amount of training, if a cop goes and just gratuitously murder somebody, you would not be able to say it's necessary for us to tell them don't commit crimes. So why does that actually undermine your Monell claim? If you see the point I'm getting at? I see the point you're getting at. If I could first just remind the court that you have Bolton, who is not actually an employee of the Sheriff's Department. He is a high school friend who has purchased his own gun at the store, has purchased his own flashlight at the store and has been given permission to be an armed ride along in the sheriff's car and to accompany as backup on a regular basis three times a week. So you have clear municipal, I think a jury could easily on that basis find that there's deliberate indifference to the obvious risk that Bolton's presence would cause and that supervision and training should have provided him to know that he can't use his armed high school buddy to tag along and back him up when dealing with citizens. But with regards to Ashurst, I think a jury could easily find that you have to have a use of force policy that gives some clarification about when the use of fatal force is appropriate. And I cite to both Uzza and Wright, which talk about you have to have some kind of meaningful training about the use of force. And in this case, their entire policy was just do it as trained and then they don't train them. And so again, I think a jury could easily find that that's deliberate indifference as well and that that is a lack of training and supervision. There are a lot of different permutations of what the jury might decide. Some of them provide liability as we discussed earlier in them. Some of them don't. But that's not the question for this court. The question for this court is whether or not plaintiff does deserve a trial on both. Thank you. We appreciate the argument both of you have given and we'll consider the case carefully. And since that is the last case, I believe you may adjourn court for today. Honorable court is now adjourned.